**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**ROUX LABORATORIES, INC.,
Defendant-Appellee.**

**No. 24283.**

United States Court of Appeals,
Ninth Circuit.

Jan. 22, 1971.

Larry Dier (argued), Asst. U. S. Atty., Wm. Matthew Byrne, Jr., U. S. Atty., Frederick M. Brosio, Jr., Chief, Civ. Div., Los Angeles, Cal., for plaintiff-appellant.

Stephen R. Lang (argued), of Shield & Smith, Los Angeles, Cal., Breed, Abbott & Morgan, New York City, for defendant-appellee.

Before CARTER, HUFSTEDLER and TRASK, Circuit Judges.

JAMES M. CARTER, Circuit Judge.

This is an appeal from a summary judgment dismissing a complaint for forfeiture under the Food, Drug, and Cosmetic Act, 21 U.S.C. § 334. The Government's complaint alleges that appellee's "Roux Lash and Brow Tint" was adulterated when introduced into and while in interstate commerce because it contains color additives, composed of silver sulfate, silver nitrate, and pyrogallol, that were "unsafe" because they have not been approved, exempted, or provisionally listed as required by statute [21 U.S.C. § 376(a)]. Appellee denied the material allegations of the com-

plaint, and asserted in affirmative defense that: (a) the chemicals in issue are not "additives", but are "diluents"; and, (b) the forfeiture action was in violation of the order, judgment and injunction entered in Toilet Goods Ass'n., Inc. v. Gardner (S.D.N.Y.1968) 278 F. Supp. 786.

The district court granted appellee's motion for summary judgment of dismissal. We reverse and remand the case to the district court for trial on the merits.

### Discussion

The Government may seize, pursuant to 21 U.S.C. § 334(a), any article of cosmetic that is adulterated when introduced into or while in interstate commerce. Section 361(e) provides that a cosmetic is adulterated if "it is, or it bears or contains, a color additive which is unsafe within the meaning of § 376(a) * * *." Section 376(a) declares that a color "additive" shall be presumed unsafe *unless* (a) there is a regulation listing the additive as safe for use and its use complies with that regulation, *or* (b) the additive and its use are exempt from the listing requirements.[1] A color "additive" is defined in 21 U.S.C. § 321(t) (1) as "a dye, pigment or other substance * * * when added or applied to a food, drug or cosmetic, or the human body * * * is capable (alone or through reaction with other substance) of imparting color thereto; * * * *"[2]

### 1. *Issue of Fact*

Appellant's primary contention on appeal is that the district court erred in granting summary judgment when material issues of fact existed—to wit: Are the ingredients silver nitrate, silver sulfate, and pyrogallol color "additives", or are they "diluents"? If any one of these ingredients is an additive, then the seizure was arguably proper because it was admitted that none of these ingredients have been listed or exempted under the regulations.

In support of its contention that these ingredients are additives, appellant submitted the affidavits of Mary M. Mandujan and Dr. Robert L. Pecsok. Mandujan is a chemist for the Food and Drug Administration. In the course of her official duties, she performed a chemical analysis of the cosmetic "Roux Lash & Brow Tint," which was found to contain quantities of silver nitrate, silver sulfate, ammonia, pyrogallol and isopropanol. She then combined the identical quantities of these ingredients, and performed certain color tests that were attached to her affidavit.

Dr. Pecsok has been a Professor of Analytical Chemistry at the University of California at Los Angeles since 1948. He reviewed the affidavit of Mandujan and stated his familiarity with the principal ingredients that she had found. In his affidavit, Dr. Pecsok states:

"When silver nitrate and silver sulfate are added to a solution of ammonia in

---

1. "[21 C.F.R. § 8.4(c)] sets forth the requirements for a listing application in elaborate detail. These include a complete description of the chemical and physical properties of the color additive, the chemical and physical tests relied on to identify it, and the methods and ingredients used for its production; a description of practical methods to determine the amount of the color additive, and of any substance formed by its use, contained in the final product; full reports of investigation made with respect to its safety; complete data to allow the Commissioner to consider the probable consumption of or other exposure to the additive and any substance formed therefrom; and proposed tolerances. If an exemption from batch certification is requested, supporting data are to be furnished. Each listing application must be accompanied by a fee of $2600 to cover the FDA's costs in processing the application and performing tests." Toilet Goods Association v. Finch (2 Cir. 1969) 419 F.2d 21, 23–24.

2. Regulation 21 C.F.R. § 8.1(f). expanded the definition of "additive" to include all "diluents" and "cosmetics intended for coloring the human body." As shown later, this was the Regulation invalidated in the *Toilet Goods* case, *supra*.

water, the silver salts dissociate into their respective ions, and the silver ions react with ammonia to form silver-ammonia complex ions. * * * The silver portion of these complex ions is easily reduced to finely divided metallic silver by reaction with many common organic substance, [sic] including pyrogallol and protein material found in human hair and skin. Finely divided metallic silver is dark in color. * * * When a solution of silver-ammonia complex ions is applied to hair or skin, the protein therein reacts relatively slowly, resulting in gradual darkening of those areas. The darkening is due to gradual deposits of finely divided metallic silver on the hair or skin substance. * * * if * * * pyrogallol is first applied to human hair or skin and a solution containing silver-ammonia complex ions is then applied, an immediate coloration is produced from the formation of finely divided metallic silver."

His affidavit concludes—*"Silver nitrate, silver sulfate, and pyrogallol are * * * color-imparting components of the product 'Roux Lash & Brow Tint' and are not diluents."* [Emphasis added]

Appellee's contention that these ingredients are diluents was supported by the affidavit of George Kremer, Jr. Mr. Kremer is the president of Roux Laboratories, Inc. He states that the seized cosmetic was developed under his personal supervision and direction, and that he is completely familiar with its formula, its manufacturing process, and its operation when applied to the human body. Mr. Kremer concludes that:

*"The silver sulfate, silver nitrate, and pyrogallol in Lash & Brow Tint do not impart color to the finished cosmetic product or to the human body. * * * [They] are components of a* color additive mixture which have been intentionally mixed therein to facilitate the use of the mixture in coloring the human body. Under the ap-

plicable regulations promulgated by the Food and Drug Administration, each of those ingredients would be deemed a 'diluent' (21 C.F.R. § 8.-1(m))." [Emphasis added]

Thus, it would certainly appear that the conclusions presented in Mr. Kremer's affidavit are in direct conflict with those in Dr. Pecsok's affidavit on the issue of whether the aforementioned ingredients are "additives" or "diluents."

In finding that there were no issues of fact, the court relied heavily on the district court decision in *Toilet Goods*. In its "Order of Judgment of Dismissal", directing that a judgment be prepared, the court concluded that:

"Whatever could be decided here can now be decided by the * * * Second Circuit with right of review by the Supreme Court. * * * [The appellee] is entitled to its summary judgment of dismissal under the doctrine of estoppel by judgment. * * * The fact that an appeal is pending or that the claimant here was a plaintiff in [*Toilet Goods*] does not foreclose the application of the doctrine of res judicata * * *"

Referring to the determination in this prior Order, the court states in its "Judgment of Dismissal" that "judgment should be entered in favor of [appellee] and against [appellant], dismissing the Complaint herein, upon the ground that the pleadings, affidavits, briefs, exhibits, and other documents before the Court show that there is no genuine issue with respect to any material fact and that [appellee] is entitled to such Judgment as a matter of law." Thus, it is apparent that the district court did not reach the factual issue of whether the ingredients in question were color additives or diluents, but instead based its summary judgment on the district court's decision in the *Toilet Goods* case.

We have examined carefully the injunction issued in *Toilet Goods*. The district court enjoined the enforcement of certain provisions in 21 C.F.R. § 8.-

1(f). The provisions declared invalid were those that designated as "additives": (1) all diluents; and (2) "lipstick, rouge, eye make-up colors, and related cosmetics intended for coloring the human body" [i. e. 'finished cosmetics products'].[3] The district court held that a plain reading of the Color Additive Amendments of 1960, [74 Stat. 397] suggests that Congress did *not* intend to subject *diluents* and *finished cosmetics products* to the listing and pre-market clearance requirements for additives. Thus, the regulation's attempt to include diluents and finished cosmetic products within the definition of "additives" was in excess of the statutory authority. The Second Circuit affirmed these determinations. Toilet Goods Ass'n v. Finch (2 Cir. 1969) 419 F.2d 21.

For our purposes, however, it is as important to consider what the district court in *Toilet Goods* did *not* determine. First, the court did not disturb the F.D. A.'s administrative authority to require listing and pre-market clearance for true "color additives", [21 U.S.C. § 321(t)] including those used as ingredients in finished cosmetic products. In this regard, the Second Circuit in *Toilet Goods* stated:

"We cannot agree with the Government that the district court's invalidation of the portion of § 8(f) which we

have quoted frustrates the 'safe-for-use' principle which concededly underlay [sic] the Color Additive Amendments. Other provisions of 21 U.S.C. § 376 confer all authority needed to that end. Although the Secretary 'may list any color additive for use generally in or on food, in or on drugs, or in or on cosmetics, if the Secretary finds that such additive is suitable and may safely be employed for such general use,' 21 U.S.C. § 376(b) (2) (A), he also may list an additive 'only for any more limited use or uses for which it is suitable and may safely be employed.' § 376(b) (2) (B). He is authorized to prescribe broadly 'the conditions under which such additive may be safely employed for such use or uses,' including tolerance limitations. § 376(b) (3). This power and the further directives in § 376(b) (4) and (5) are ample authority for the Secretary to prescribe that a particular 'dye, pigment or other substance' may be used with certain diluents but not with others, or at higher concentrations with some than with others. It may well be that, in some cases, a cosmetics manufacturer might be obliged to supply an amount of information concerning a finished cosmetic equivalent to what would be required for listing. But it does not follow from this that Congress meant to subject

3. The judgment of the district court in The Toilet Goods Association Inc. v. Gardner, Sec. H.E.W. consisted of three parts, (a) (b) and (c). The Government does not attack (b), which invalidated § 8.1(m) of the Regulations and the one sentence of § 8.1(f) reading "This includes all diluents." Part (c) of the judgment concerned § 8.1(u), of the Regulations pertaining to hair dyes and is not pertinent to our problem. As to part (a) the judgment reads:

"FURTHER ORDERED AND DECLARED that the following provisions of the Color Additives Regulations [21 C.F.R. § 8.1 et seq. (1967)] ('the Regulations') are not in accordance with law, exceed the authority granted to defendants by the Federal Food, Drug, and Cosmetics Act as amended (the

'Act') and are null and void and of no force and effect, namely:
'(a) § 8.1(f) of the Regulations providing as follows:
'A substance that, when applied to the human body results in coloring, is a "color additive," unless the function of coloring is purely incidental to its intended use, such as in case of deodorants. *Lipsticks, rouge, eye make-up colors, and related cosmetics intended for coloring the human body are "color additives,"* and also any other provisions of the Regulations which have or may have the *purpose or effect of defining or treating articles of cosmetics or finished cosmetics products as color additives,* or of requiring the listing or certification or other *premarketing clearance of articles of cosmetics or of finished cosmetic products; * * * '* " [Emphasis added]

**214**

the many thousands of cosmetic formulations to pre-marketing clearance —both listing and certification—at enormous and apparently unnecessary cost both to the industry and to the Government." 419 F.2d at 27, 28.

Second, the district court in *Toilet Goods* did not determine whether silver nitrate, silver sulfate, and pyrogallol are "additives" or "diluents". The court only granted the Toilet Goods Association's request for an injunction against the enforcement of 21 C.F.R. § 8.1(f) because it improperly included *diluents and finished cosmetic products* within the definition of additives.

We conclude that the district court erred in granting the appellee's motion for summary judgment. The application of the doctrines of estoppel by judgment and res judicata was not justified. The *Toilet Goods* decision did *not* enjoin the F.D.A. from seizing cosmetics that *contain* "additives" that are unsafe because they have not been listed or exempted under the regulations. Furthermore, the district court in *Toilet Goods* did not determine whether the ingredients silver nitrate, silver sulfate, and pyrogallol are "additives" or "diluents". Therefore, the district court's reliance on *Toilet Goods* begged the controlling factual issue in this case. Are silver nitrate, silver sulfate, and pyrogallol "additives" or "diluents"?

#### 2. *Estoppel Contention.*

 Appellee urges that, even if the district court erred in granting summary judgment, this court should nevertheless affirm the result because appellee is entitled to judgment as a matter of law on the ground of estoppel. More specifically, appellee asserts that the F.D.A. must be estopped from obtaining forfeiture of these cosmetics because it has rendered compliance with the Act impossible. Compliance was allegedly impossible because the F.D.A. has refused to grant permanent listing of additives

during the pendency of the *Toilet Goods* appeal.

Appellee has failed in its proof. We cannot conclude that the F.D.A., at any time, announced a blanket refusal to consider listing applications for additives pending the appeal in *Toilet Goods*. Appellee has shown no prejudice or no improper practices by the F.D.A. The estoppel argument is without merit.

The judgment of the district court is reversed and remanded for trial on the merits.