478 So.2d 467 (1985)
Eugene BROWNLEE, Appellant,
v.
STATE of Florida, Appellee.
No. 84-2054.
District Court of Appeal of Florida, Fourth District.
November 13, 1985.
Richard L. Jorandby, Public Defender, and Thomas F. Ball, III, Asst. Public Defender, West Palm Beach, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Georgina Jimenez-Orosa, Asst. Atty. Gen., West Palm Beach, for appellee.
GLICKSTEIN, Judge.
Appellant was charged by information with one count of armed robbery, one count of attempted robbery and two counts of aggravated assault, found guilty of all charges by a jury, and adjudicated and sentenced by the trial court. We affirm.
The pre-trial motion to sever appellant's case from that of his codefendant, Darryl Whitfield, was based entirely on the fact that the state was seeking to introduce the taped confessions of appellant and his codefendant in violation of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). The prosecution objected on the ground that the confessions were interlocking and admissible under Parker v. Randolph, 442 U.S. 62, 99 S.Ct. 2132, 60 L.Ed.2d 713 (1979).
The state presented three witnesses to the crimes, Mr. and Mrs. McHugh, and Samuel DeNoms. All three identified appellant immediately, at the show-up fifteen *468 minutes after the robbery took place, and at trial. The state also presented the testimony of several police officers involved in the arrest.
Mr. McHugh testified that the two defendants approached them at a store and got within arm's distance. Whitfield pointed the gun at his face and said he wanted his wallet. Mrs. McHugh testified that as she got out of the car, she noticed the two men walking towards them very quickly; she caught up with her husband and grabbed hold of his arm and put her purse on her shoulder because "they looked like they were coming at us." Whitfield said, "This is a holdup." She said, "Oh no. Please don't hurt us," and appellant said, "Give me your purse." Appellant then grabbed her purse. She was then either told to get down or pushed down.
Mr. DeNoms testified that he was driving down Second Street, heading west, en route to Seventh Street. As he reached Southwest Second Street and First Avenue Mr. DeNoms heard a woman's loud scream. He looked around and saw some people in front of Sterling's (the store), some with their hands up in the air, and an individual "apparently holding them at bay." He pulled over and noticed an individual (he later identified as appellant) running from the crowd and carrying something. The individual ran across the street directly in front of Mr. DeNoms and between some buildings. Mr. DeNoms decided to try to follow appellant. Not locating appellant, DeNoms parked and stood by his car looking around the area. He then noticed appellant across the railroad tracks with a bicycle and still carrying something under his arm. Appellant then put the bicycle in some bushes and headed back toward the buildings he had left. DeNoms tried to follow appellant again and saw appellant meet a second man. The two men spoke briefly, then departed. Appellant, still carrying something under his arm, came within 25 yards of DeNoms. Mr. DeNoms started walking slowly in the direction of appellant when "all of a sudden something came behind [him] and knocked [him] to the ground." Mr. DeNoms was kicked in the back of the neck, and this individual began screaming threatening obscenities and pulled a gun on DeNoms. Mr. DeNoms was lying on the ground, looking up at the person holding a gun down to his face, then covered his face with his arms, and heard the gun go off. When he looked to see what had happened, he noticed the individual (identified by DeNoms as Whitfield), trying to get the wallet out of his pocket. Mr. DeNoms, believing it to be a cap gun, kicked Whitfield, knocking him off balance, then jumped up and ran to his car. Whitfield yelled at DeNoms to stop, and the gun was fired a second time, the bullet hitting a puddle less than a foot from DeNoms' tracks.
As DeNoms was attempting to drive away, a police car arrived and DeNoms told the police where they could find Whitfield (who was chased down by the police). DeNoms testified he identified appellant at a show-up shortly after he was arrested.
Detective DeAngelis, the officer who arrested appellant, stated that when he encountered two individuals on bicycles who matched the BOLO description, he ordered them to freeze, whereupon appellant jumped off the bike. Detective DeAngelis stated he noticed appellant was carrying a purse in his hand. When appellant jumped off the bike he threw the purse over his left shoulder and it landed about five feet behind DeAngelis. When Detective DeAngelis recovered the purse an identification card in it identified it as Mrs. McHugh's. The detective also found several .22 caliber bullets (the same caliber as the gun used) in appellant's pocket. The two confessions of the codefendants were also introduced.
The issue is whether the trial court erred in denying appellant's motion for severance where a non-testifying codefendant's confession was admitted into evidence against appellant. We conclude it did not.
Appellant first suggests that the confessions of the codefendants are not interlocking and severance should have therefore been granted under Bruton v. United States. Parker v. Randolph created an exception to Bruton:

*469 When two codefendants each confess to a crime and each confession implicates the other, and the two confessions interlock such that the salient facts against the first defendant that appear in the confession of the second defendant also appear in the confession of the second defendant also appear in the confession of the first, and vice versa, then each confession is admissible in full against the maker thereof at a joint trial.
442 U.S. at 72-74, 99 S.Ct. at 2138-39, 60 L.Ed.2d at 722.
Appellant contends that the confessions are not interlocking and points out the following discrepancies:

 Whitfield Appellant
 1. Said that both he and 1. Said that Whitfield
 Appellant initiated the idea came to him and told that
 to get some quick money. Whitfield was going to pay
 back an old debt to Appellant.
 2. Said that not only did 2. Said he had no knowledge
 Appellant know of the intended that a gun would be
 use of a gun, but he used until Whitfield pulled
 even supplied the gun that his own gun on the victims.
 was used in the robbery.
 3. Said that only two people, 3. Said that there was another,
 he and Appellant, were third person, involved
 involved. in the robbery.
 4. Said that Appellant 4. Said that Whitfield
 took Mrs. McHugh's purse took the purse from Mrs.
 from her and left with the McHugh and threw it to
 purse in his possession. him. Appellant then
 dropped the purse because
 he did not want to participate
 in the scheme when it
 became clear to him what
 it entailed.

As to point number one, appellant stated in his confession he knew he was going to be a lookout for a robbery:
Question: Well, if he told you, after he told you to be a lookout, then you knew what was going to happen.
Answer: I knew what was happening.
Question: All right. He told you that was why you were leaving 712 Southwest 14th Avenue as you were riding by there?
Answer: After we got down there to 218.
Question: All right. You are riding from your girlfriend's house?
Answer: No. I was to my girlfriend's house.
Question: You were at your girlfriend's house.
Answer: Right.
Question: He picked you up there?
Answer: Right.
Question: And then you left?
Answer: Right.
Question: And he's telling you he wants you to be a lookout?
Answer: Right.
Question: What does that mean to you?
Answer: To me? Then I knew what was going down.
Question: What was going down. Tell me what was going down.
Answer: I knew he was going to hit, make a hit.'
Question: A robbery?
Answer: Yeah. Well, you know, (unintelligible).
As to point number two, as stated above, appellant stated he knew he was to be a lookout for a robbery. He also initially stated Whitfield had shown him the gun before the robbery:
See, I didn't know he had no gun until he told me when we got so far down, he say, hey, man, I got a gun.
Question: That was prior to the robbery, though, right?
Answer: Right.
As to point number three, we do not consider the number of people involved in a robbery to be a salient fact. The fact that there may have been three people instead of two does not make appellant any more or less culpable. As to point number four, it is true that the confessions departed on this point (although the testimony of all the witnesses clearly establish that appellant took the purse). Still, appellant's own confession indicates that he knew there was going to be a robbery, he knew Whitfield had a gun, and he knew he was to be a "lookout" and he accompanied Whitfield to the scene. The fact that a codefendant's confession is, predictably, more exculpatory *470 concerning immaterial details of a crime, does not render its admission in any meaningful sense harmful in the defendant's case. Felton v. Harris, 482 F. Supp. 448, 455 nn. 12-13 (S.D.N.Y. 1979); Damon v. State, 397 So.2d 1224 (Fla. 3d DCA 1981). Whether to grant a severance lies within the discretion of the trial court. Adams v. State, 445 So.2d 1132 (Fla. 2d DCA 1984). We do not think it can be said the trial court abused its discretion in finding the confessions sufficiently interlocking to be admissible.
Additionally, it appears the harmless error rule[1] would be applicable in this case. In Schneble v. Florida, 405 U.S. 427, 430, 92 S.Ct. 1056, 1059, 31 L.Ed.2d 340, 344 (1971), the Supreme Court stated:
The mere finding of a violation of the Bruton rule in the course of the trial, however, does not automatically require reversal of the ensuing criminal conviction. In some cases the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the codefendant's admission is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error.
In the present case, appellant's confession, combined with the testimony of the victims, Mr. DeNoms and the arresting officer supplied more than enough evidence to find appellant guilty beyond a reasonable doubt. Therefore, it would appear, error, if any, was harmless.
It should also be noted that the prosecutor improperly used the confessions in his jury argument. Again, however, given the overwhelming amount of evidence, this would appear to be harmless error. See Adams, 445 So.2d at 1134.
HERSEY, C.J., and HURLEY, J., concur.
NOTES
[1] In some cases, the distinction between the harmless error rule and the Parker exception is basically one of semantics. See Damon; United States v. Roux Laboratories, Inc., 437 F.2d 209 (9th Cir.1971) (though we do not think this is necessarily the case when evidence other than the codefendant's confession plays a large part in finding harmless error).