495 So.2d 128 (1986)
Carl PUIATTI, Appellant,
v.
STATE of Florida, Appellee.
Robert D. Glock, Appellant,
v.
State of Florida, Appellee.
Nos. 65321, 65380.
Supreme Court of Florida.
August 21, 1986.
Rehearing Denied October 28, 1986.
*129 James Marion Moorman, Public Defender, and Robert F. Moeller, Asst. Public Defender, Tenth Judicial Circuit, Bartow, for Carl Puiatti.
William G. Dayton, Dade City, for Robert D. Glock, II.
Jim Smith, Atty. Gen., and Robert J. Landry, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Carl Puiatti and Robert D. Glock appeal their convictions for first-degree murder, kidnapping, and robbery, and their death sentences imposed by the trial judge in accordance with the jury's recommendation. We have jurisdiction, article V, section 3(b)(1), Florida Constitution, and we affirm the convictions and the death sentences.
The trial record reflects that on August 16, 1983, the woman victim arrived at a Bradenton shopping mall. As she exited her automobile, Puiatti and Glock confronted her, forced her back inside the car, and drove away with her. They took $50 from her purse and coerced her into cashing a $100 check at her bank. They then took the victim to an orange grove outside Dade City where they took the woman's wedding ring and abandoned her at the roadside. After traveling a short distance, the appellants determined that the woman should be killed, and they returned in the car to her. When the car's window came adjacent to the woman, Puiatti shot her twice. The appellants drove away, but, when they saw she was still standing, they drove by the victim again and Glock shot her. When the woman did not fall, the appellants made a third pass with the automobile, Glock shot her another time, and the woman collapsed.
Four days later, a New Jersey state trooper stopped the victim's vehicle because its license plate was improperly displayed. Puiatti and Glock occupied the automobile. When neither appellant could present a valid driver's license, the officer requested the car's registration. As Puiatti opened the glove box, the trooper saw a handgun. The officer seized that handgun, searched the vehicle, and uncovered another handgun. He then arrested both men for possession of handguns without permits. The police later identified the handgun from the glove box as the murder weapon.
The next day Puiatti and Glock individually confessed to the kidnapping, robbery, and killing. These initial confessions varied only to the extent that each blamed the other as instigator of the killing and each offered a differing sequence of who fired the shots at the victim. Each confessor admitted he had fired shots at the victim. Three days later, on August 24, Puiatti and Glock gave a joint statement concerning their involvement in the murder. In this joint confession, the appellants resolved the inconsistencies in their prior statements: they agreed that Glock initially suggested shooting the victim and that Puiatti fired the first shots and Glock fired the final shots.
Before trial, both appellants moved to sever their trials on the grounds that the state intended to introduce each appellant's individual confession. The trial court denied their motions. At trial, neither appellant testified in his own behalf, and the three confessions  the two individual confessions and the joint confession  were admitted in evidence. The appellants objected only to the introduction of the individual confessions. The trial court overruled appellants' objections, but, before admitting each individual statement, the trial court admonished the jury to disregard each defendant's individual confession as it tended to implicate the other.
The jury found each appellant guilty of first-degree murder, kidnapping, and robbery. In the penalty phase, Puiatti waived any reliance on the mitigating factor of no significant prior criminal history, but offered psychiatric testimony indicating he *130 was under Glock's substantial domination. Glock claimed the application of the mitigating factor of no significant prior criminal history and introduced psychiatric evidence suggesting that he would not have participated in the crime but for his association with Puiatti. The jury, by an 11-to-1 vote, recommended imposition of the death penalty for both Puiatti and Glock.
The trial judge, in accordance with the jury recommendation, imposed the death penalty on both appellants, finding no mitigating circumstances and the following three aggravating circumstances: (1) the murder was committed to avoid arrest [section 921.141(5)(e), Florida Statutes (1983)]; (2) the murder was committed for pecuniary gain [section 921.141(5)(f), Florida Statutes (1983)]; and (3) the murder was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification [section 921.141(5)(i), Florida Statutes (1983)].

Puiatti's Guilt Phase
Puiatti challenges his conviction by asserting that the trial court erred in: (1) failing to sever his trial from Glock's; (2) excluding from the trial stage prospective jurors opposed to the death penalty; (3) failing to suppress Puiatti's post-arrest statements; (4) allowing the prosecutor to advise the jury that it could presume premeditation from Puiatti's involvement in a felony murder; and (5) allowing the prosecutor's comments to the jury which characterized Puiatti as an "animal" and described the offense charged to Puiatti as "probably any woman's nightmare." We find no merit in any of the points. Puiatti's points (4) and (5) require no discussion. Contrary to his assertion in point (3), we find that there was probable cause to make Puiatti's arrest. With regard to point (2), we have previously held that excluding prospective jurors opposed to the death penalty is not error. Kennedy v. Wainwright, 483 So.2d 424 (Fla. 1986); Caruthers v. State, 465 So.2d 496 (Fla. 1985); Copeland v. State, 457 So.2d 1012 (Fla. 1984), cert. denied, 471 U.S. 1030, 105 S.Ct. 2051, 85 L.Ed.2d 324 (1985); Sims v. State, 444 So.2d 922 (Fla. 1983), cert. denied, 467 U.S. 1246, 104 S.Ct. 3525, 82 L.Ed.2d 832 (1984). See also Sullivan v. Wainwright, 464 U.S. 109, 104 S.Ct. 450, 78 L.Ed.2d 210 (1983); In re Shriner, 735 F.2d 1236 (11th Cir.1984); Smith v. Balkcom, 660 F.2d 573 (5th Cir.1981), cert. denied, 459 U.S. 882, 103 S.Ct. 181, 74 L.Ed.2d 148 (1982). We do find that point (1), the severance issue, deserves discussion.
Puiatti contends that the trial court's failure to grant a severance denied his right to confrontation of Glock as to those portions of Glock's initial confession which implicated Puiatti. Puiatti relies on Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), in which the United States Supreme Court held that the admission of the codefendant's confession had deprived the defendant of his rights under the confrontation clause of the sixth amendment. We find that Bruton is not applicable under the facts of this cause, concluding that Parker v. Randolph, 442 U.S. 62, 99 S.Ct. 2132, 60 L.Ed.2d 713 (1979), controls this case. In Parker, the United States Supreme Court held that Bruton does not require reversal of a defendant's conviction when the defendant himself has confessed and his confession "`interlocks' with and supports the confession of his codefendant." Id. at 64, 99 S.Ct. at 2135. Confessions interlock when the salient facts against the first defendant that appear in the confession of the second defendant also appear in the confession of the first, and vice versa. United States v. Kroesser, 731 F.2d 1509, 1518 (11th Cir.1984); Brownlee v. State, 478 So.2d 467 (Fla. 4th DCA 1985); Damon v. State, 397 So.2d 1224 (Fla. 3d DCA 1981). These cases establish that interlocking confessions need not be identical statements; it is sufficient if the confessions are substantially consistent on the major elements of the crime involved.
In this case, Puiatti and Glock offered interlocking confessions. The initial individual confessions contained only slight inconsistencies, and each set forth sufficient evidence on the charged crimes to sustain *131 the confessor's conviction. The fact that Glock's initial confession might have been exculpatory toward Puiatti concerning some details does not render its admission harmful when Puiatti's own confession clearly shows him guilty of the crime with which he is charged. See United States ex rel. Ortiz v. Fritz, 476 F.2d 37 (2d Cir.), cert. denied, 414 U.S. 1075, 94 S.Ct. 591, 38 L.Ed.2d 482 (1973); O'Callaghan v. State, 429 So.2d 691 (Fla. 1983); McCray v. State, 416 So.2d 804 (Fla. 1982). Further, the subsequent joint confession, admitted without objection by Puiatti, reconciled the minor discrepancies of the individual confessions by Puiatti and Glock. We conclude that the trial court correctly denied Puiatti's motion for severance during the guilt phase of the trial. We emphasize that the inconsistencies between Puiatti's and Glock's initial confessions do not affect their guilt in the charged crimes since both admit they shot the victim. Each appellant is guilty of all the acts of the other in perpetrating the common criminal act.

Puiatti's Penalty Phase
Puiatti challenges his sentence of death by asserting five reversible errors during his penalty proceeding. First, he claims that the trial court's denial of a severance in the penalty phase prejudiced him, arguing that Glock presented antagonistic arguments on the aggravating circumstance of substantial domination and that the jury was exposed to improper instructions and prosecutorial argument relating to the non-existence of the mitigating factor of no significant prior criminal history. We hold that a severance was not required in the penalty phase of the trial. As to the alleged conflict concerning which defendant dominated the other, our decision in McCray disposes of this contention. In McCray we stated:
[T]he fact that the defendant might have a better chance of acquittal or a strategic advantage if tried separately does not establish the right to a severance. Nor is hostility among defendants, or an attempt by one defendant to escape punishment by throwing the blame on a codefendant, a sufficient reason, by itself, to require severance. If the defendants engage in a swearing match as to who did what, the jury should resolve the conflicts and determine the truth of the matter.
416 So.2d at 806 (citations omitted). See also Dean v. State, 478 So.2d 38 (Fla. 1985). Further, we find the mere fact that only one of two codefendants has a significant prior criminal history does not require, in and of itself, a severance in the trial's penalty phase. The critical question is whether the jury was able to consider evidence presented by each defendant during the penalty phase and apply the law without being unduly confused or prejudiced. We find that, under the circumstances of this case, the jury could properly apply the facts to the law without confusion or prejudice.
Second, Puiatti claims that the trial court erred in considering the murder as cold, calculated, and premeditated. The undisputed facts reflect that there was not just one attack on the victim, but three separate assaults. Puiatti and Glock were methodic in their continued return to and pursuit of the victim. We conclude that the trial court correctly found this aggravating circumstance. See Johnson v. State, 465 So.2d 499 (Fla.), cert. denied, ___ U.S. ___, 106 S.Ct. 186, 88 L.Ed.2d 155 (1985); Mills v. State, 462 So.2d 1075 (Fla.), cert. denied, ___ U.S. ___, 105 S.Ct. 3538, 87 L.Ed.2d 661 (1985); Preston v. State, 444 So.2d 939 (Fla. 1984).
Third, Puiatti maintains that the trial court erred in failing to consider the mitigating circumstances that Puiatti was under the influence of extreme mental and emotional distress, that he acted under the substantial domination of Glock, that he lacked the capacity to conform his conduct to the requirements of law, that he functions at a child's emotional level, that he confessed and cooperated with the police, that he possessed the potential for rehabilitation, and that he had a strong family background. Our review of this record reveals that the trial court considered these *132 mitigating factors and concluded that they failed to rise to a sufficient level to be weighed as mitigating circumstances. The trial court committed no error.
Fourth, Puiatti asserts that the trial court erroneously refused to instruct the jury on several non-statutory mitigating circumstances. The record reflects that Puiatti was permitted to proffer any relevant mitigating evidence, and his counsel was allowed to argue such evidence. In accordance with the standard jury instructions, the trial court instructed the jury that it could consider any aspect of the appellant's character or of the record in addition to the statutory mitigating circumstances in making its sentence recommendation. We find no trial court error.
Finally, Puiatti argues that the trial court erred in instructing the jury and receiving its penalty recommendation on Sunday. According to Puiatti, a judge has no authority to hold court on Sunday. We find no reversible error. No sentence or judgment was actually imposed on Sunday, and Puiatti never complained about the Sunday proceedings to the trial court. Furthermore, we note that Florida's procedural rules envision the possibility of holding at least some criminal proceedings on Sunday by implicitly mandating first appearance proceedings and by explicitly allowing additional jury instructions and the verdict's receipt on Sunday. See Fla.R. Crim.P. 3.130; 3.540.

Glock's Guilt Phase
On appeal, Glock raises only one challenge to the determination of his guilt. He claims that exclusion at the trial stage of prospective jurors opposed to the death penalty constituted reversible error. As Glock acknowledges, this Court and federal courts have expressly rejected this argument. Shriner; Smith; Kennedy; Caruthers; Copeland; Sims. See also Sullivan. We reject this contention and reaffirm our previous holdings on this issue.

Glock's Penalty Phase
In the penalty phase, Glock claims that the trial court erred in (1) failing to sever his sentencing hearing from Puiatti's; (2) finding the aggravating circumstance of cold, calculated, and premeditated; (3) failing to find as a mitigating circumstance Glock's cooperation with the police and his potential for rehabilitation; and (4) instructing the jurors and receiving their penalty recommendation on a Sunday.
For the reasons expressed previously in this opinion, we find that Glock was not entitled to a severance of his sentencing hearing; that cold and calculating was a proper aggravating circumstance; and that it was not error to instruct the jurors and receive their penalty recommendation on Sunday. Further, as with Puiatti, we find that the trial court considered the mitigating factors applying to Glock, but concluded they failed to rise to a sufficient level to be weighed as mitigating circumstances. Accordingly, we affirm imposition of the death penalty for Glock.

Conclusion
After review of the entire record in this cause, we find that sufficient evidence exists to sustain the convictions of each appellant and that the death sentences are proportionately correct. See, e.g., Parker v. State, 476 So.2d 134 (Fla. 1985); Bates v. State, 465 So.2d 490 (Fla. 1985); Card v. State, 453 So.2d 17 (Fla.), cert. denied, 469 U.S. 989, 105 S.Ct. 396, 83 L.Ed.2d 330 (1984); Squires v. State, 450 So.2d 208 (Fla.), cert. denied, 469 U.S. 892, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984). Therefore, the convictions of Puiatti and Glock for robbery, kidnapping, and first-degree murder, and their sentences for each offense, are affirmed.
It is so ordered.
McDONALD, C.J., and ADKINS, BOYD, OVERTON, EHRLICH and SHAW, JJ., concur.
BARKETT, J., concurs in result only.