589 So.2d 231 (1991)
Carl PUIATTI, Petitioner,
v.
Richard L. DUGGER, et al., Respondents.
Carl PUIATTI, Appellant,
v.
STATE of Florida, Appellee.
Nos. 74865, 76211.
Supreme Court of Florida.
October 3, 1991.
Rehearing Denied December 12, 1991.
*232 Steven A. Reiss, Miranda S. Schiller and Leah A. Hofkin of Weil, Gotshal & Manges, New York City, for petitioner/appellant.
Robert A. Butterworth, Atty. Gen. and Robert J. Landry, Asst. Atty. Gen., Tampa, for respondent/appellee.
PER CURIAM.
Carl Puiatti appeals the trial court's denial of his motion for relief pursuant to rule 3.850, Florida Rules of Criminal Procedure, and petitions this Court for a writ of habeas corpus.[1] We affirm the trial court's denial of the claims raised by Puiatti in his rule 3.850 motion and deny his petition for habeas corpus relief.
The appellant, Carl Puiatti, and Robert D. Glock were charged in 1983 with kidnapping, robbery, and first-degree murder. They had kidnapped a woman from a Bradenton shopping mall, took money from her purse, and coerced her into cashing a check at her bank. They then drove the victim in her car to an orange grove outside of Dade City, Florida, where Puiatti and Glock each shot the woman two times. Puiatti and Glock then proceeded to New Jersey, where they were apprehended in the victim's automobile. Both men individually confessed to participating in this killing, and, subsequently, Puiatti and Glock issued a joint confession, which was signed by both men. Puiatti and Glock were tried together, and both were found guilty and sentenced to death. We affirmed the convictions and sentences in Puiatti v. State, 495 So.2d 128 (Fla. 1986), vacated, 481 U.S. 1027, 107 S.Ct. 1950, 95 L.Ed.2d 523 (1987). A more detailed statement of the facts is contained in that opinion. Puiatti filed a petition for certiorari to the United States Supreme Court, which accepted jurisdiction, vacated our decision, and remanded the cause to us for reconsideration in light of its decision in Cruz v. New York, 481 U.S. 186, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987). Upon remand, we found this case distinguishable from Cruz "because Puiatti and Glock not only entered into separate interlocking confessions, but they also subsequently entered into a joint confession resolving all prior inconsistencies," Puiatti v. State, 521 So.2d 1106, 1108 (Fla.), cert. denied, 488 U.S. 871, 109 S.Ct. 184, 102 *233 L.Ed.2d 153 (1988), and we further found "the introduction of the individual confession of Glock to be harmless error under the circumstances of this case." Id. We reaffirmed Puiatti's conviction and sentence of death, and the United States Supreme Court subsequently denied certiorari.

Rule 3.850 Motion
In his rule 3.850 motion, Puiatti raised the following nine claims: (1) that he was denied the effective assistance of counsel because of his two attorneys' relatively young age and inexperience, as indicated by counsel's failure to raise at the suppression hearing Puiatti's inability to knowingly waive his rights; (2) that counsel was ineffective for failing to move for a change of venue; (3) that counsel was ineffective when she conceded guilt during voir dire examination; (4) that counsel was ineffective for failing to present during the guilt phase evidence concerning Puiatti's mental state at the time of the crimes; (5) that counsel was ineffective for failing to present any evidence during the guilt phase bearing on the probative value of the confession; (6) that counsel was ineffective for failing to properly investigate and present statutory mitigating circumstances during the penalty phase; (7) that the trial court applied an incorrect standard in determining whether nonstatutory mitigating factors existed and whether such evidence had to be weighed; (8) that Puiatti was deprived of a reliable and individualized capital-sentencing determination by his counsel's assertions to the jury that its sympathy toward Puiatti was an improper consideration; and (9) that an erroneous jury instruction misled the jury as to its role regarding sentencing.
We find that none of the claims provide a basis for a finding of reversible error. The only issues that merit discussion are claim (6), in which Puiatti asserts that defense counsel was ineffective for failing to properly investigate and present mitigating circumstances, and Puiatti's assertion that the trial judge erred in denying an evidentiary hearing on his 3.850 motion. The trial judge, in denying relief on claim (6), articulated his reasoning in the following manner:
Mr. Puiatti alleges he was denied a reliable and individualized capital sentencing determination through his attorney's ineffective investigation and presentation of statutory mitigating circumstances, in violation of the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and their Florida counterparts. This claim is evidenced by the following facts:
This was the first penalty phase ever presented by the defense attorney Howardene Garrett. Mr. Puiatti alleges his defense attorney did not conduct a competent background investigation. A competent investigation would have revealed to the judge and jury that Mr. Puiatti was part of the class of people who should escape the death penalty.
... [I]n his motion Mr. Puiatti has statements and stories from various people familiar with his background. These people would have told how he came from a home where he was verbally and physically abused. How he did not have the normal childhood that his mother testified to during the penalty phase. That his mother and her promiscuous lifestyle contributed to his problems.
Mr. Puiatti alleges evidence of his depraved childhood, his dependent personality, drug and alcohol use, and his learning deficiency should have been more accurately portrayed during the penalty phase. Mr. Puiatti alleges his defense counsel was ineffective in her investigation for not uncovering these characteristics in his background. However, Mr. Puiatti's defense counsel had a psychiatrist and a psychologist testify during the penalty phase. Also his attorney spoke with Mr. Puiatti's sister and his mother. His mother testified that Mr. Puiatti came from a good family background, even though now there appears to be conflicting evidence about this. Mr. Puiatti tried to use his good family background as a mitigating factor during his penalty phase. Now he wants to reverse his position and claim a bad family *234 life as a mitigating factor. Evidence of his dependent personality, drug use, and learning disability was presented during the penalty phase of his trial. Although all possible background information on Mr. Puiatti may not have been discovered, it is apparent that this attorney presented substantial evidence on his behalf during the penalty phase. Mr. Puiatti also spoke on his own behalf. Mr. Puiatti is not entitled to error free counsel. He cannot complain of representation that might be judged ineffective only by benefit of hindsight. Young v. Zant, 677 F.2d 792 (1982).
It is evident from the sentencing record that Mr. Puiatti had effective counsel. There is no doubt that with the benefit of hindsight most counsel would do certain things differently. But that does not make the representation Mr. Puiatti received ineffective.
The trial court found three aggravating circumstances and no mitigating circumstances in Mr. Puiatti's case. He has failed to show with a reasonable probability that his sentence would be different even if the trial court were to believe and consider his current claims.
Puiatti asserts that counsel was ineffective for failing to obtain family information that would have refuted the testimony of his mother concerning his background and, consequently, would have changed how counsel presented his case to the jury during the penalty phase. The trial judge expressly noted that evidence of Puiatti's "dependent personality, drug use, and learning disability was presented during the penalty phase of his trial." We agree with the trial judge that the allegations in this instance are insufficient under the standards set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and that, given this record, the allegations do not require an evidentiary hearing.

Habeas Corpus
In his petition for a writ of habeas corpus, Puiatti asserts that appellate counsel was ineffective for failing to raise the following issues: (1) that the trial court prevented Puiatti from conducting a meaningful and effective voir dire; (2) that the trial court erred in denying numerous juror challenges for cause; (3) that the jury finally empaneled to decide Puiatti's case was manifestly biased; (4) that the trial court erroneously gave jury instructions which improperly shifted the burden of proof; (5) that the trial court erroneously submitted to the jury a felony murder charge for which Puiatti was not indicted; (6) that the trial court denied Puiatti his right to an individualized sentencing by joining his penalty hearing with that of his codefendant; (7) that the trial court violated Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), by instructing the jury concerning its responsibility in the penalty phase; (8) that Puiatti's confessions should have been suppressed on additional grounds; (9) that the trial court erred in instructing the jury on the "heinous, atrocious, or cruel" and "cold, calculated, and premeditated" aggravating factors. In addition to these claims relating to ineffective assistance of appellate counsel, Puiatti also claims in this habeas corpus petition that Puiatti's rights were violated by the prosecutor's presentation of evidence of the victim's character and victim-impact information and that this Court's consolidated treatment of Puiatti's and Glock's direct appeals deprived Puiatti of his right to an individualized and reliable capital sentencing determination.
We find these claims to be without merit, and we deny relief. The one issue that merits discussion, claim (2), concerns the assertion that Puiatti was forced to exercise four of his ten peremptory challenges on jurors who should have been excused for cause. In each instance, defense counsel unsuccessfully moved to have the juror stricken for cause because the juror knew witnesses or had read something about the case in the newspapers. At the end of voir dire, counsel did ask for additional challenges, and the trial court denied the request. Puiatti relies on our recent decision in Reilly v. State, 557 So.2d 1365 (Fla. 1990). In Reilly, the juror had *235 read newspaper accounts of the incident prior to trial and knew that a confession had been given. The confession in that case had been suppressed by the trial court and was not to be a part of the trial. We found that the trial court erred in not dismissing the juror for cause, stating, "The problem is that juror Blackwell knew that a confession had been given. This might not require disqualification if the confession were going to be introduced into evidence. Here, however, the confession had been suppressed." Id. at 1367 (emphasis added). Unlike Reilly, in this case there is no showing in this record that the jurors were familiar with the confessions, and, more important, the confessions in this case had not been suppressed and were introduced as evidence. The fact that a juror knows something about the case or knows individuals who may be witnesses clearly is not grounds per se to excuse the juror for cause. Rather, this Court long ago adopted the following standard:
"The true doctrine is, that if the juror's conceptions are not fixed and settled, nor warped by prejudice, but are only such as would naturally spring from public rumor or newspaper report, and his mind is open to the impressions it may receive on the trial, so as to be convinced according to the law and the testimony, he is not incompetent."
O'Connor v. State, 9 Fla. 215, 219 (1860) (quoting 2 T. Waterman, Graham & Waterman on New Trials 378 (2d ed. 1855) (alteration in original)). Moreover, "[t]his Court has adopted the rule which makes the question of the competency of a challenged juror one of mixed law and fact to be determined by the trial judge in his discretion. This decision will not be disturbed unless error is manifest." Singer v. State, 109 So.2d 7, 22 (Fla. 1959). The question we must answer in this case is whether the trial judge, based on this record, abused his discretion in denying defense counsel's requests to excuse the jurors for cause. We find no abuse of discretion from this record, and, consequently, appellate counsel could not have been ineffective for failing to raise this issue in the initial appeal.
Puiatti's appellate counsel raised ten issues in the initial appeal.[2] We have considered the claims raised in the initial appeal and each of the instant claims of ineffective assistance of counsel. We conclude that appellate counsel's performance was not deficient under the standards set forth in Strickland. We hold that this record fails to demonstrate that Puiatti's appellate counsel rendered ineffective assistance and that Puiatti's other claims in this petition for habeas corpus have no merit.
For the reasons expressed, we affirm the trial court's denial of Puiatti's motion for rule 3.850 relief, and we deny his petition for a writ of habeas corpus.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD and GRIMES, JJ., concur.
BARKETT, J., concurs specially with an opinion, in which KOGAN, J., concurs.
*236 BARKETT, J., specially concurring.
I acknowledge that the Court has previously addressed Puiatti's claim concerning severance. See Puiatti v. State, 495 So.2d 128, 131 (Fla. 1986), vacated on other grounds, 481 U.S. 1027, 107 S.Ct. 1950, 95 L.Ed.2d 523 (1987); see also Puiatti v. State, 521 So.2d 1106 (Fla. 1988) (affirming conviction and sentence on remand), cert. denied, 488 U.S. 871, 109 S.Ct. 184, 102 L.Ed.2d 153 (1988). Having recently refocused on the problems associated with joint penalty phases, however, I would reconsider Puiatti's penalty phase claim that he did not receive the individualized sentencing hearing he is entitled to under the constitution. See Espinosa v. State, No. 73,436, slip op. at 17-18, 1991 WL 123077 (Fla. July 11, 1991) (Barkett, J., dissenting) (where defendants are presenting antagonistic defenses, severance should always be the rule in the penalty phase of a capital case).
KOGAN, J., concurs.
NOTES
[1] We have jurisdiction. Art. V, § 3(b)(1), (9), Fla. Const.
[2] In the direct appeal, Puiatti claimed that, as to the guilt phase of his trial, "the trial court erred in: (1) failing to sever his trial from Glock's; (2) excluding from the trial stage prospective jurors opposed to the death penalty; (3) failing to suppress Puiatti's post-arrest statements; (4) allowing the prosecutor to advise the jury that it could presume premeditation from Puiatti's involvement in a felony murder; and (5) allowing the prosecutor's comments to the jury which characterized Puiatti as an `animal' and described the offense charged to Puiatti as `probably any woman's nightmare.'" Puiatti v. State, 495 So.2d 128, 130 (Fla. 1986). As to the penalty phase, Puiatti claimed: (1) "that the trial court's denial of a severance in the penalty phase prejudiced him," id. at 131; (2) "that the trial court erred in considering the murder as cold, calculated, and premeditated," id.; (3) "that the trial court erred in failing to consider the mitigating circumstances that Puiatti was under the influence of extreme mental and emotional distress, that he acted under the substantial domination of Glock, that he lacked the capacity to conform his conduct to the requirements of law, that he functions at a child's emotional level, that he confessed and cooperated with the police, that he possessed the potential for rehabilitation, and that he had a strong family background," id.; (4) "that the trial court erroneously refused to instruct the jury on several non-statutory mitigating circumstances," id. at 132; and (5) "that the trial court erred in instructing the jury and receiving its penalty recommendation on Sunday." Id.