RAMIREZ, C.J.
Terrell McKay appeals his judgment of conviction and sentence, arguing that he should receive a new trial because the trial court committed error when it denied his motion to strike a juror for cause and subsequent request for an additional peremptory challenge. We reverse because the trial court abused its discretion when it *1179 denied McKay’s request to strike a juror for cause.
The State of Florida filed an information charging McKay with the sale of cocaine within one thousand feet of a school zone. During the jury selection process, defense counsel moved to strike a prospective juror, A.F. (number fifteen in the venire), for cause arguing that this juror would hold it against the defense if McKay did not testify. During the initial colloquy, the following exchange took place.
MR. KRYPEL: Mr. [A.F.]?
PROSPECTIVE JUROR A.F.: Yes.
MR. KRYPEL: You are saying you want to hear from Mr. Terrell McKay?
PROSPECTIVE JUROR A.F.: Yes.
MR. KRYPEL: If you don’t hear from
Mr. Terrell McKay, you are going to be thinking what is that guy hiding? You know a bad answer is a false answer.
PROSPECTIVE JUROR A.F.: I understand that and I would rather speak in privately. I don’t want it to affect the jury. That is the only reason.
Outside of the presence of the other jurors, the following exchange took place:
PROSPECTIVE JUROR A.F.: Just the answer to the question counsel asked. The reason why I said I didn’t want to explain wasn’t only because as an attorney I have worked in the past — not criminal law, but administrative law. It is almost the government versus an individual. So just as a philosophical versus an individual. So just as a philosophical point as an attorney, the way I would advise my client in this situation, tell me the truth and we will work from there. And I understand counsel. They may have their reason why and strategically and everything else, “Just take the offer.”
My concern is if counsel for whatever reason does not want his client to testify and State presents the evidence and it is credible, then I am going to be more inclined to basically convict and that is what I want to say. I didn’t want to say it in front of the jury because I didn’t want somebody to sit there, “If he is an attorney, then he must know something,” and that is why I asked for the privacy.
THE COURT: We appreciate it.
The question is when you say credible, is that different than proof to the exclusion of every reasonable doubt, if the State doesn’t meet their burden?
PROSPECTIVE JUROR A.F.: If the State doesn’t meet their burden?
THE COURT: What is the verdict?
PROSECTIVE JUROR A.F.: Innocent.
THE COURT: Not guilty?
PROSPECTIVE JUROR A.F.: Not guilty because the State did not meet their burden.
THE COURT: Would it matter to you at all whether or not Mr. McKay decided to testify? Is there an issue?
PROSPECTIVE JUROR A.F.: It is not necessarily — it is not necessarily an issue, but as I said my only concern is if the State presents the case.
THE COURT: And they meet—
PROSPECTIVE JUROR A.F.: And they meet their burden and I didn’t hear anything from Mr. McKay’s side?
THE COURT: Let me ask you this.
His lawyer is going to ask questions of the State’s witness.
PROSPECTIVE JUROR A.F.: Okay.
THE COURT: What you are telling me, if you are not convinced beyond and to the exclusion of every reasonable doubt, that it would still be an issue for you as to why Mr. McKay—
PROSPECTIVE JUROR A.F.: No.
THE COURT — didn’t testify?
*1180 PROSPECTIVE JUROR A.F.: It would not be an issue, but I just wanted to give that opportunity to present that. I thought it was something that both sides should know. I will if both sides — we would like to be part of the jury. I will do my best.
THE COURT: I appreciate your candor and your openness. In the context of an administration while commenting that it was somewhat similar and you want your clients to make full disclosure.
From a practitioner’s point of view, from procedural and administrative procedure it is far different than criminal proceedings. You are talking about it in terms of your own practice and what would be your normal practice.
PROSPECTIVE JUROR A.F.: Exactly. Any follow-up questions?
MR. NIXON: Nothing from the State.
MR. PONT: I am still confused.
THE COURT: They thought it was pretty clear.
MR. PONT: Bottom line, are you still going to be affected if you are chosen as a juror in this case if the defendant does not testify? It sounds like you may be affected.
PROSPECTIVE JUROR A.F.: I think it is only — this is just being the lawyer part of me. But for all consideration if the State presents their evidence and I find — hypothetically speakiny, I find the evidence to be credible and yet despite cross examination I don’t hear from counsel and from your client, then that is goiny to sway me to the direction to the State’s burden. This is the way I am speaking hypothetically. MR. PONT: All right.
Thank you for that hypothetical answer, (emphasis added). The trial judge denied defense counsel’s request to strike juror A.F. for cause. Defense counsel thereafter used a peremptory challenge on juror A.F.
Defense counsel ultimately exhausted all of his peremptory challenges. He then requested an additional challenge against another juror which the trial court granted, stating that the court would “allow one and only one.”
Thereafter, defense counsel renewed his request for one more peremptory challenge based upon the denial of defense challenges for cause directed at A.F. and others, including juror eleven. The trial court denied this request. Defense counsel advised the court that if he had been allowed the additional peremptory, he would have exercised it to strike juror eleven.
At the conclusion of jury selection, the defense reserved its objection before the jury was sworn. The jury ultimately found McKay guilty as charged. The jury ultimately found McKay guilty as charged.
We now turn to defense counsel’s initial request to strike juror A.F. for cause. The standard of review of a trial court’s decision to deny a challenge for cause is whether the court abused its discretion. See Pentecost v. State, 545 So.2d 861, 862-63 (Fla.1989); Leon v. State, 396 So.2d 203, 205 (Fla. 3d DCA 1981). Absent manifest error, a determination of whether a challenged juror is competent will not be disturbed. See Puiatti v. Dugger, 589 So.2d 231 (Fla.1991); Miller v. State, 934 So.2d 580, 581 (Fla. 3d DCA 2006); Hall v. State, 682 So.2d 208, 209 (Fla. 3d DCA 1996). There is manifest error when a juror responds with equivocal or conditional answers that thereby raise a reasonable doubt as to whether the juror possesses the requisite state of mind necessary to render an impartial decision. See Salgado v. State, 829 So.2d 342, 344 (Fla. 3d DCA 2002).
*1181 Based upon the totality of juror A.F.’s responses, we must conclude that the statements clearly established a reasonable doubt as to whether he could render an impartial decision. Juror A.F. initially stated that he wanted to hear from McKay and requested to speak in private so that his comments would not affect the jury. Outside the presence of the jury, he unequivocally stated that if the State presented credible evidence and McKay did not testify, he would “be more inclined to basically convict.” This statement is entirely at odds with a defendant’s presumption of innocence and right to remain silent at trial, two of the most basic tenets at the heart of our system of justice. It served to create a reasonable doubt as to whether this juror could be impartial. If a prospective juror’s statements raise reasonable doubts as to that juror’s ability to render an impartial verdict, the juror should be excused. See Turner v. State, 645 So.2d 444, 447 (Fla.1994). Juror A.F. thus should have been excused.
The State argues that the trial court did not abuse its discretion, that manifest error did not occur, and that the judge, from her vantage point at the trial court level, correctly determined that there was no doubt that juror A.F. was fit to serve as a juror. We disagree.
None of the statements juror A.F. made following his initial comments served to erase the reasonable doubt his answers gave as to whether he could render an impartial verdict if the State presented credible evidence and McKay failed to testify. Juror A.F. indeed noted that he would consider the evidence and that, unless the State proved that a defendant was guilty, the defendant would be innocent. He further stated that: he was an attorney, a defendant is not guilty if the State failed to meet its burden, and that he would “do his best” as a juror.
Furthermore, any attempt to rehabilitate juror A.F. were unsuccessful. At no time did juror A.F. state that, if the State satisfied its burden, he would not hold it against the defense if McKay did not testify. He instead clearly stated that if he found the State’s evidence to be credible, despite cross-examination, and he did not hear from McKay, he would be swayed toward “the direction [of] the State’s burden.” This response, given at the conclusion of the exchange that occurred outside of the presence of the jury, sufficiently placed doubt upon this juror’s ability to be an impartial juror, notwithstanding any attempt at rehabilitation. Because the impartiality of jurors is critical to the operation of the justice system, “[cjlose cases should be resolved in favor of excusing the juror rather than leaving a doubt as to his or her impartiality.” See Sydleman v. Benson, 463 So.2d 533 (Fla. 4th DCA 1985); Price v. State, 538 So.2d 486, 489 (Fla. 3d DCA 1989).
Therefore, we reverse McKay’s judgment of conviction and sentence, and remand for a new trial.