PER CURIAM.
Michael Glen Patrick Reilly appeals his conviction and sentence of death for first-degree murder as well as his convictions for sexual battery and aggravated child abuse. These convictions occurred as a result of a retrial mandated by this Court’s decision in Reilly v. State, 557 So.2d 1365 (Fla.1990). We have jurisdiction under article V, section 3(b)(1) of the Florida Constitution.
Reilly was indicted for first-degree murder, sexual battery, and aggravated child abuse committed upon Jonathan Wells. The indictment charged the single homicide in three counts: premeditated murder, felony murder during an aggravated child abuse, and felony murder during a sexual battery. The jury acquitted Reilly of premeditated murder but found him guilty of the felony murders and the two underlying felonies. The jury recommended a life sentence for the murder by a vote of eight to four. The presiding judge ordered the two felony murder counts merged and adjudged Reilly guilty of a single count of felony first-degree murder. The court also adjudged Reilly guilty of the sexual battery and aggravated child abuse counts. The court sentenced Reilly to death for the murder, to life for the sexual battery, and to fifteen years for child abuse. In support of his decision, the judge found no mitigating factors but did find three aggravating *223 factors. The aggravating factors identified by the trial judge were: (1) Reilly had a previous conviction for a violent felony; (2) the homicide occurred during the commission of a sexual battery and an aggravated child abuse; and (3) the homicide was committed in a heinous, atrocious, or cruel manner.
Four-year-old Jonathan Wells went fishing near a neighbor’s dock on February 2, 1988. He was last seen by his mother shortly after 12 P.M. Jonathan’s father began looking for him around 3 P.M. At approximately 4:30 P.M. Jonathan’s body was found near the waterline of the incoming tide. An autopsy revealed trauma and wounds to his head and neck. Jonathan’s throat had multiple lacerations and contained patterned bruises that appeared to be finger marks. There was also one deep, side-to-side incision of the throat. The coroner found the cause of death was asphyxiation due to strangulation. Because of the small amount of blood in the victim’s trachea, the coroner was uncertain when the incision was made, though he thought it probably occurred after death. A serologist found semen and type “A” blood in Jonathan’s mouth and on the front of his shirt.
Reilly was linked to the crime as follows: A substitute mailman who knew Reilly saw him walking in the area around 3:30 P.M. He stated that Reilly appeared dazed and did not reply when spoken to. A shoe print found 800 feet from the crime scene was made by one of Reilly’s shoes. Type “A” blood was found on a knife obtained from Reilly’s home.
Two inmates testified for the State at trial. Randy White, in jail on two robbery charges, testified that Reilly confessed he was in jail for killing a little boy. Reilly told him that he had the boy perform oral sex, became excited, and cut the boy’s throat. White also claimed he witnessed an argument between Reilly and another inmate. White claimed that during the fight Reilly exclaimed,' “I’ll kill you just like I killed that little boy.”
Kenny Peck, another inmate, also testified to incriminating statements made by Reilly. Peck claimed that Reilly approached him as Peck was reading a religious pamphlet. Peck asked Reilly why he killed the little boy. In response, Reilly allegedly said he killed the boy because the boy would not perform oral sex. According to Peck, Reilly then said he cut the boy’s throat to make it look as if someone else did the crime and that the knife would not be found in the bay.
Reilly’s first claim on this appeal is that the trial court erred in admitting the testimony of the jail inmates. We find this claim to be without merit. This Court has already ruled that the intervening events (a first appearance in court, the appointment of counsel, and consultation with family) were sufficient to cause a breach between Reilly’s coerced confession to the police and his unsolicited comments to his fellow inmates. Reilly v. State. Though not raised as a point on appeal, we also conclude that the evidence was sufficient to sustain the conviction of all three crimes.
Reilly next claims the trial court erred in imposing the death sentence despite the jury’s recommendation for a life sentence. We agree. The jury’s recommendation for a life sentence must be given great weight. Tedder v. State, 322 So.2d 908 (Fla.1975). The totality of evidence presented at trial provided a reasonable basis for the jury’s life sentence.
At the outset, it must be noted that the jury found that the murder was not premeditated. See Norris v. State, 429 So.2d 688 (Fla.1983) (lack of intent to kill was a factor in prompting this Court to reverse a jury override). Further, Reilly has long-term, chronic mental impairments. While discounting their weight, the trial judge explained these impairments in his sentencing order:
[I]t is an undisputed fact that the defendant is a borderline retarded individual with a dull or low normal intelligence level. He has an IQ level of 80, placing him in the lowest 16% of the population. According to Dr. James D. Larson, a licensed forensic psychologist, the defendant is a “brain impaired” individual with *224 severe learning disabilities. In fact, the defendant spent his entire educational efforts in special education programs. Consequently, his employment record and capabilities are limited to menial tasks involving manual labor. Since birth, the defendant has had a physical problem with an eye muscle (further injured by a rock striking the eye in 1970), resulting in some uncaring persons taunting him with the appellation, “wandering four eyes.” His speech is also “halted” due to a stuttering problem he had during his childhood years. Throughout the trial of this case, I paid close attention to the defendant’s appearance, his conduct in court, and to his testimony in both the guilt phase and the penalty phase. The court is well satisfied that the defendant’s mental and physical disabilities are real, rather than feigned in order to gain sympathy.
With respect to the jury’s recommendation of life imprisonment, we cannot say that the facts suggesting a sentence of death are “so clear and convincing that virtually no reasonable person could differ.” Tedder, 322 So.2d at 910.
We affirm Reilly’s convictions for first-degree murder, sexual battery, and aggra-. vated child abuse but reduce his death sentence to life imprisonment without eligibility for parole for twenty-five years from the date of the sentence, less any jail time served.
It is so ordered.
SHAW, C.J., and OVERTON, McDonald, BARKETT, KOGAN and HARDING, JJ., concur.
GRIMES, J., concurs in part and dissents in part with an opinion.