557 So.2d 1365 (1990)
Michael Glenn Patrick REILLY, Appellant,
v.
STATE of Florida, Appellee.
No. 73571.
Supreme Court of Florida.
March 8, 1990.
Rehearing Denied April 12, 1990.
Michael E. Allen, Public Defender, and William C. McLain, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., and Mark C. Menser, Asst. Atty. Gen., Tallahassee, for appellee.
*1366 PER CURIAM.
Reilly was convicted of the first-degree murder of Jonathan Wells. Pursuant to the recommendation of the jury, the trial judge imposed the death penalty. We review the judgment and sentence pursuant to article V, section 3(b)(1), of the Florida Constitution.
During the course of investigation, Reilly had given a confession to sheriff's deputies. The trial judge later suppressed the confession as being involuntary because of improper promises made to Reilly, who was found to have less than average intelligence and to be emotionally handicapped.
At the trial, the following colloquy occurred during the voir dire of juror Blackwell:
MR. TERRELL: Yes, sir. Sir, you indicated that you knew something about this case from the news or talking about it. What do you remember about it?
PROSPECTIVE JUROR: When the case first happened.
MR. TERRELL: What do you remember about that?
PROSPECTIVE JUROR: The first three or four days I kept up with what was in the newspaper, what was on the television, and then after  I think before the investigation was even  had gotten out of the media, I kind of got away from following it and that sort of thing.
MR. TERRELL: Those first few days, what do you remember about the case? Give us any detail of what you recall.
PROSPECTIVE JUROR: The young boy was fishing close to home, his age, that towards the end of it that the young man had been accused, and they had the little map about the path that the boy took, and he showed some lady a fish or gave some fish to a lady, that there was a knife that they were diving for for several days. That was about it.
MR. TERRELL: Do you have any idea what it was that led to any arrest in the case?
PROSPECTIVE JUROR: That led to the arrest?
MR. TERRELL: Yes. Why the police arrested the person they arrested.
PROSPECTIVE JUROR: No, but I had heard there was a confession or I think that was in the paper. There was a confession.
MR. TERRELL: What do you remember about that?
PROSPECTIVE JUROR: Just that there was a confession.
MR. TERRELL: Okay. Do you have any idea where this question about diving for a knife came from?
PROSPECTIVE JUROR: Question?
MR. TERRELL: Uh-huh. I mean, why the police would have been diving for a knife, where that information came from so they would do that?
PROSPECTIVE JUROR: No, other than it was in the newspaper that they were diving for a knife.
MR. TERRELL: At that time based on that information did you form any opinion about the person that was arrested?
PROSPECTIVE JUROR: Well, I was opinionated about the whole issue. To form an opinion about this young man, no, not form an opinion about whoever did it.
MR. TERRELL: Right. That's what I'm asking you, about your opinion back then as to who 
PROSPECTIVE JUROR: I thought it was a rather terrible thing.
MR. TERRELL: Did you form any opinion about the guilt or innocence of whoever did it back then?
PROSPECTIVE JUROR: Well 
MR. TERRELL: I know that's a tough 
PROSPECTIVE JUROR: How  I mean, it's kind of tough to say somebody was guilty, but if you're asking me if I decided then that this young man was guilty, no.
... .
THE COURT: Mr. Blackwell, let me ask one thing. Whatever you read in the paper or heard about the case to begin with, are you able to set aside any impressions that you have from that and *1367 judge this case just on the evidence that you receive here during the trial?
PROSPECTIVE JUROR: I believe I will, Your Honor.
THE COURT: You apparently don't have any fixed opinion concerning guilt or innocence of anybody in connection with this matter?
PROSPECTIVE JUROR: Fixed opinion someone was guilty?
THE COURT: Do you have an opinion that any particular person is guilty of a crime in connection with this incident from what you have 
PROSPECTIVE JUROR: No person. It's obvious that a crime was committed.
THE COURT: Any other questions of this witness?
MR. SCHILLER: No, Your Honor.
MR. TERRELL: Sir, if I can, just one other  I'm sorry. You had mentioned something about you had read something about a confession and search for a knife. Do you remember anything about the details of that alleged confession?
PROSPECTIVE JUROR: No.
MR. TERRELL: Would that influence you in any way if there were no confessions presented in the case, or would you have that in your mind?
PROSPECTIVE JUROR: No. If the confession were presented and supported in court as fact, then it would  then I would consider it, but not because  not because of having read it in the newspaper.
Defense counsel then moved that Mr. Blackwell be excused for cause. The trial judge denied the motion. Thereupon, the defense excused Mr. Blackwell with a peremptory challenge. At the conclusion of voir dire, defense counsel had exhausted all of his peremptory challenges. He requested additional peremptory challenges, noting three jurors remaining on the panel as ones he wished to excuse. The motion was denied.
Having preserved his position for appeal according to the requirements of Hill v. State, 477 So.2d 553 (Fla. 1985), Reilly now contends that the refusal to remove juror Blackwell for cause was reversible error. The problem is that juror Blackwell knew that a confession had been given. This might not require disqualification if the confession were going to be introduced into evidence. Here, however, the confession had been suppressed. Thus, juror Blackwell was aware of a fact that was inadmissible which was far more damaging to Reilly than anything which was actually introduced into evidence. While Mr. Blackwell subsequently gave the right answers with respect to whether or not he could be an impartial juror, it is unrealistic to believe that during the course of deliberations he could have entirely disregarded his knowledge of the confession no matter how hard he tried. Thus, we conclude that reversible error was committed by the failure to excuse juror Blackwell for cause.
Because the case will have to be retried, there is one additional point which should be addressed. Several days after making his confession which was later suppressed, Reilly made incriminating statements to three inmates while he was in jail. He asserts that these incriminating statements should be suppressed as fruits of the poisonous tree because he was still under the influence of the prior involuntary confession and because he was illegally arrested. We reject this contention. Between the time that Reilly confessed and when he made these statements, he had attended a first appearance hearing, had an attorney appointed to represent him, and had been visited by his parents. Two of the statements were entirely unsolicited, and the third was volunteered in answer to a question. None of the inmates were acting on behalf of the state when the statements were made. Even if we accept Reilly's argument that his arrest was illegal because it was based on his involuntary confession, it is clear that the intervening events were sufficient to break any causal connection between the confession and the arrest and the statements which Reilly made to the inmates. See State v. Maier, 378 So.2d 1288 (Fla. 3d DCA 1979); Jetmore v. State, 275 So.2d 61 (Fla. 4th DCA), cert. denied, 279 So.2d 312 (Fla. 1973). The testimony of the inmates concerning Reilly's *1368 inculpatory statements was properly admitted.
We reverse the conviction and the sentence and remand the case for a new trial.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDONALD, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.