667 So.2d 765 (1996)
John Edward BOGGS, Appellant,
v.
STATE of Florida, Appellee.
No. 83409.
Supreme Court of Florida.
February 8, 1996.
*766 James Marion Moorman, Public Defender and A. Anne Owens, Assistant Public Defender, Tenth Judicial Circuit, Bartow, for Appellant.
Robert A. Butterworth, Attorney General and Robert J. Landry, Assistant Attorney General, Tampa, for Appellee.
PER CURIAM.
We have on appeal the judgment and sentence of the trial court imposing the death penalty upon John Edward Boggs. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
This is Boggs' second trial on the charges of two counts of first-degree murder, one count of attempted first-degree murder, and one count of burglary with a firearm.[1] In the first trial, Boggs was convicted of the charges, and the jury recommended death on each count of first-degree murder. On appeal to this Court, we reversed, finding that the trial court erred in not conducting a proper competency determination under Florida Rules of Criminal Procedure 3.210 and 3.211. Boggs v. State, 575 So.2d 1274 (Fla.1991).
After Boggs was determined competent to stand trial, the second trial began in early 1994. The defense presented no case, and the jury found Boggs guilty as charged. After a penalty-phase hearing, the jury recommended death by a vote of eight to four. The judge followed this recommendation and sentenced Boggs to death on both murder counts.
On appeal to this Court, Boggs raises sixteen points of error. However, because we find that the trial court abused its discretion with regard to how it conducted voir dire, we must reverse Boggs' conviction and death sentence and remand this cause for a new trial. Consequently, the remaining issues on appeal are moot, and we will not address them.
Prior to the retrial, there was substantial publicity about the case in newspaper articles read by members of the venire. These articles highlighted prejudicial and inadmissible information to Boggs' retrial. The Tampa Tribune ran an article on the front page with the headline, "Murder suspect: acting or insane?" The article detailed the procedural history of the case, including the fact that Boggs had previously been convicted and sentenced to death for this crime. The article further explained that Boggs had not only been found competent to stand trial, but that the court expressly found that he was malingering.[2] Also, the article contained statements from the prosecutor reporting that the prosecutor believed Boggs was faking mental illness. Additionally, The St. Petersburg Times ran a front-page article about the trial on the morning of the day voir dire began which contained similar information about both the procedural and factual history of the case and a statement made by the judge presiding over the retrial that he believed that Boggs was faking mental illness to avoid execution.[3]
*767 Nevertheless, the trial court decided that it would not alter its procedure of conducting voir dire in groups. In order to determine the effect of the pretrial publicity, the trial court asked each potential juror several questions in the presence of the venire. First, the court asked if the juror had read or heard anything about the case prior to trial. If the answer was "yes," the court next asked the juror if, regardless of that information, the juror had reached a tentative decision as to the defendant's guilt. If the answer again was "yes," the court continued and asked if, regardless of the decision, the juror was willing and able to render a verdict based entirely upon the evidence presented, even if the verdict was contrary to the juror's present feelings.
This inquiry revealed that six of the first thirteen prospective jurors had read or heard something about the case prior to the retrial, and five had formed some opinion as to Boggs' guilt. Three of those five stated that they would be able to set aside their opinions and base a verdict solely on the evidence presented at trial. One of these three, who had read one of the newspaper articles and had formed an opinion, worked in the communications division of the Pasco County Sheriff's Office and knew by name or knew personally all of the officers named as potential witnesses in the case. The remaining two jurors of the five who had formed opinions as to Boggs' guilt were equivocal as to whether they could render a verdict solely on the evidence presented at trial. Prospective juror Johnson, who worked near the scene of the crime at the time of the crime, stated that it would be difficult to render an unbiased verdict based solely and entirely upon the evidence presented in the courtroom. She further stated that she was unsure if she could put aside her present feeling about Boggs' guilt and base a verdict solely and entirely upon the evidence. Similarly, prospective juror Erbe also read about the case in the newspaper and had formed an opinion as to Boggs' guilt. At the time of trial, Erbe was divorcing her husband, who was a Hillsborough County Sheriff's deputy and had a daughter who was a Tampa police dispatcher. Even though the prospective juror said she would try not to let those relationships affect her feelings toward police officers in general, when asked if she could base her verdict solely on the evidence presented, she responded that she "would certainly try."
Defense counsel moved for more extensive voir dire to determine the extent of the jurors' knowledge about the case, but the court denied the motion. Counsel then moved to excuse these three prospective jurors for cause. When the trial court denied the motion, counsel used a peremptory challenge to excuse Johnson. Next, counsel specifically requested individual sequestered voir dire of the remaining jurors who had read about the case,[4] but the court denied the motion. As a result, counsel was forced to exercise peremptory challenges to excuse the remaining jurors who had read about the case and had formed an opinion as to Boggs' guilt, including juror Erbe and the prospective juror who was employed by the Pasco County Sheriff's Office.
The purpose of conducting voir dire is to secure an impartial jury. See Davis v. State, 461 So.2d 67 (Fla.1984), cert. denied, 473 U.S. 913, 105 S.Ct. 3540, 87 L.Ed.2d 663 (1985). To this end, the trial court has broad discretion in deciding if prospective jurors must be questioned individually about publicity the case may have received. See Johnson v. State, 608 So.2d 4 (Fla.1992), cert. denied, 508 U.S. 919, 113 S.Ct. 2366, 124 L.Ed.2d 273 (1993); Pietri v. State, 644 So.2d 1347 (Fla. 1994), cert. denied, ___; U.S.___, 115 S.Ct. 2588, 132 L.Ed.2d 836 (1995). Additionally, the United States Supreme Court has held that individual voir dire to determine juror impartiality in the face of pretrial publicity is constitutionally compelled only if the trial court's failure to ask these questions renders the trial fundamentally unfair. See Mu'Min *768 v. Virginia, 500 U.S. 415, 111 S.Ct. 1899, 114 L.Ed.2d 493 (1991).
In this case, because of the timing and the content of the newspaper articles and the statements made by these prospective jurors that they had read newspaper articles and had formed opinions about the case, individual voir dire examination of these prospective jurors was compelled. Through individual voir dire, the trial court could have determined the extent of the prospective jurors' knowledge of the newspaper articles and evaluated whether their preformed opinions could be set aside. This procedure would have also protected the remainder of the venire from any potential contamination resulting from this questioning. Given the particular facts of this case, including the fact that several jurors had read these newspaper articles and formed opinions as to the defendant's guilt, we find that the trial court abused its discretion by not allowing further individual inquiry of the two prospective jurors who could not unequivocally state that they could not set aside their preformed opinion as to Boggs' guilt and base a verdict solely on the evidence presented, and of the prospective juror who worked for the same sheriff's office that investigated the case and stated that he had formed a tentative opinion as to Boggs' guilt.[5]
The State relies on Pietri v. State, 644 So.2d 1347 (Fla.1994), to show that the conviction should be affirmed because no juror who had formed an opinion actually sat on the jury. However, Pietri is distinguishable because in that case, the trial judge readily excused prospective jurors who had heard about the case and formed an opinion. This is unlike the instant case because the defendant here was forced to use peremptory challenges to dismiss jurors who had formed opinions about the case, even those who were equivocal as to whether they could set aside those opinions and base a verdict solely on the evidence presented. In fact, after defense counsel exhausted all of his peremptory challenges, he requested more and specified four jurors he would excuse if granted more peremptories. However, the trial court denied the request. Thus, because the trial court forced Boggs to use peremptory challenges on these three jurors without knowing the extent of their knowledge about the case and the bases for their opinions and the trial court denied Boggs the use of additional peremptories after his peremptories were exhausted, this error was not harmless.[6]Cf. Reilly v. State, 557 So.2d 1365 (Fla.1990) (holding that trial court's failure to remove juror for cause who knew about defendant's suppressed confession was not harmless error given that defense counsel had to excuse that juror with a peremptory challenge and defense counsel's request for additional peremptory challenges to excuse three jurors after he had exhausted his other peremptories was denied).
As stated previously, the other points raised by Boggs are moot. We do though specifically point out that it will be necessary *769 for the trial court to determine before the next trial that Boggs is competent to proceed. This determination is to be made in accord with Florida Rules of Criminal Procedure 3.210, 3.211, and 3.212. Accordingly, we reverse the conviction and sentence and remand the case for a new trial.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW, KOGAN, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] The grand jury initially returned an indictment on one count of first-degree murder, two counts of attempted first-degree murder, and one count of burglary with a firearm. One of the attempted first-degree murder counts was later amended to first-degree murder after one of the victims died.
[2] The article highlighted this quote from the competency order issued by Judge Wayne Cobb:

"[John Boggs] has apparently concluded that the only way he can escape some rather severe temporal punishment is to feign insanity, and up to now, it has been working wonderfully."
[3] This statement came after a 1991 hearing to determine Boggs' competency. The judge who presided over the retrial also presided over that hearing. While the judge declared Boggs mentally incompetent because he could not or would not help his attorneys prepare a defense for retrial, the article reported that the judge stated that he believed Boggs was faking mental illness to avoid execution.
[4] The State used a peremptory challenge to excuse one of the jurors who had read about the case and had formed an opinion but stated that he could set that opinion aside.
[5] We recognize and reiterate the standard that the mere fact that a juror is exposed to pretrial publicity is not enough to raise the presumption of unfairness. See Bundy v. State, 471 So.2d 9, 19 (Fla.1985), cert. denied, 479 U.S. 894, 107 S.Ct. 295, 93 L.Ed.2d 269 (1986). "It is sufficient if the juror can lay aside his or her opinion or impression and render a verdict based on the evidence at trial." Id. at 20. However, in certain instances, we have recognized that a juror who responds with the appropriate responses to questions about whether the juror is impartial may be subject to removal for cause. Cf. Reilly v. State, 557 So.2d 1365 (Fla.1990) (holding that it was error for trial court to not excuse a juror for cause who was aware that defendant had given a confession which was suppressed, even though juror stated that he could be an impartial juror). Thus, even though prospective juror Smith stated that despite his opinion he could base a decision solely on the evidence presented, the fact that he had formed an opinion and worked for the sheriff's department required the trial court to allow further inquiry into the basis and extent of his opinion.
[6] This case is also dissimilar to Castro v. State, 644 So.2d 987 (Fla.1994). In Castro, the defendant claimed that because of pretrial publicity, the court should have removed several jurors for cause. The defendant had to excuse these jurors with peremptory challenges. Eventually, the defendant exhausted his peremptories, and the jury consisted of two jurors who had read about the case. Castro is distinguishable because there, the court conducted individual voir dire of each prospective juror. Also, no juror who had read about the case in Castro had formed an opinion about the case.