736 So.2d 1160 (1999)
Oscar Ray BOLIN, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 89,385.
Supreme Court of Florida.
June 10, 1999.
*1161 James Marion Moorman, Public Defender, and Douglas S. Connor, Assistant Public Defender, Tenth Judicial Circuit, Bartow, Florida, for Appellant.
Robert A. Butterworth, Attorney General, and Candance M. Sabella, Assistant Attorney General, Tampa, Florida, for Appellee.
PER CURIAM.
We have on appeal the judgment and sentence of the trial court imposing the death penalty upon Oscar Ray Bolin, Jr. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We reverse Bolin's conviction and sentence and order a new trial because the trial court erred in denying Bolin's motion for individual and sequestered voir dire of prospective jurors who had been exposed to prejudicial pretrial publicity and who eventually served on Bolin's jury.
Bolin was tried, convicted, and sentenced to death in Pasco County for the murder of Teri Lynn Mathews on the night of December 5, 1986, in the area of the Land O' Lakes Post Office where Mathews had a post office box.
This Court reversed Bolin's initial conviction in this case because improper evidence was admitted at trial. Bolin v. State, 650 So.2d 19 (Fla.1995). After retrial, the jury convicted Bolin and returned a unanimous recommendation of a sentence of death. The court sentenced Bolin to death, finding four aggravating circumstances: that Bolin had previously been convicted of violent felonies; that the murder was cold, calculated, and premeditated (CCP); that the murder was heinous, atrocious, or cruel (HAC); and that the murder was committed during a felony (kidnapping). The court gave great weight to each of the aggravators. The court found no statutory mitigating circumstances but found as nonstatutory mental-health mitigators that Bolin had minimal brain damage (moderate weight); that his capacity to appreciate the criminality of his conduct or conform his conduct to the requirements of law was "impaired but not substantially impaired" (slight weight); and that the crime was committed while Bolin was under the influence of mental or emotional disturbance (moderate weight). The court found and gave little weight to the following additional nonstatutory mitigators: that Bolin was abused during childhood; had a deprived childhood; was not disruptive during trial; had rescued a friend from potential drowning; and was gainfully employed at the time of the *1162 crime. Finding that the aggravators outweighed the mitigators, the court sentenced Bolin to death on October 9, 1996.
Bolin raises eight claims in this appeal.[1] Because we find that the trial court abused its discretion regarding the conduct of voir dire, we must again reverse Bolin's conviction and death sentence and remand for a new trial. Thus, the remaining claims on appeal are moot. Aside from the first claim, concerning voir dire, we will address claims two and four only as they relate to Bolin's next trial.
The first claim is dispositive and concerns Bolin's contention that the trial court abused its discretion in denying defense counsel's motion for individual and sequestered voir dire of prospective jurors who said they had read newspaper articles about Bolin's case that were published in Pasco County on the days leading up to Bolin's trial. Bolin contends that he was deprived of his right to a fair and impartial jury in that he was unable to ascertain how this exposure to pretrial publicity affected jurors who sat on his jury. Specifically, Bolin contends that the court erred in refusing to allow individual and sequestered voir dire of five prospective jurors with admitted prior knowledge of the case, which included possible knowledge of news reports concerning prior-crime evidence that was inadmissible in Bolin's retrial in Pasco County.
On Saturday, August 10, 1996, two days before jury selection began the following Monday in the instant trial, the Tampa Tribune published an article in its Pasco County edition that contained inadmissible and prejudicial information including the following:
During the first trial, Phillip Bolin was a willing witness for the state, and his testimony played an important part in putting Oscar Bolin, now 34, on death row....
. . . .
All three convictions were reversed in 1995 by the Florida Supreme Court, which ruled the trial judge erred in allowing testimony of Bolin's former wife, who is now deceased, as to what Oscar Bolin had told her about the killings.
Also during the weekend before the trial began, the St. Petersburg Times, which circulates in Pasco County, published an article containing the following inadmissible and prejudicial information:
Bolin, a 34-year-old former carnival worker, was convicted of Mathews' murder and of killing two other women in Hillsborough County, but the convictions were overturned by the state Supreme Court, taking Bolin off death row.
In Bolin's trials for the 1986 murders of Natalie Blanche Holley, 25, and Stephanie Collins, 17, his ex-wife, Cheryl Jo Colby, testified that he had confessed to the killings. A conviction in the Mathews case was based in part on Bolin's previous convictions.
On Monday, August 12, 1996, the day that jury selection began, the Tampa Tribune published another article about Bolin's case based on interviews with the victim's mother and sister. Inadmissible and prejudicial information in that article included the following:

*1163 Bolin was convicted in 1992 in Teri's death. Juries also found him guilty of murdering two young Hillsborough women and the 34-year-old former truck driver was sentenced to die in the electric chair in all three cases.
But while he sat on death row, Bolin's convictions were overturned.
The same article quoted Teri Lynn Mathews' mother as follows: "`How do you get three murder convictions and not be guilty of something?' [Mathews' mother] says. `I brought my child up to obey the law and to trust it. This is a sham of justice. And it's draining the life out of all of us.'" This article also quoted Mathews' sister as saying: "`This is a predator among all of us. If he gets out, he'll kill again. It will be someone else's daughter. It will be someone else's sister.'"
On Monday, August 12, 1996, the Tampa Tribune published a separate article containing inadmissible and prejudicial information including in relevant part:
Accused serial killer Oscar Ray Bolin's retrial begins today in New Port Richey under tight security.
The 34-year-old former truck-driver was convicted in 1992 and sentenced to die for killing 26-year-old Teri Lynn Mathews. But the Florida Supreme Court overturned that murder conviction and two others from Hillsborough County.
. . . .
From his jail cell in 1990, Bolin was accused of plotting to kidnap the wives of the Hillsborough sheriff and two other officers.
In the months prior to the trial, defense counsel twice moved the court to conduct individual and sequestered voir dire concerning trial-related publicity and prospective jurors' opinions concerning the death penalty. Bolin sought individual voir dire to question each prospective juror who indicated exposure to pretrial publicity apart from the other venirepersons in order not to "`educate' all jurors as to prejudicial and incompetent material, thereby rendering it impossible to select a fair and impartial jury." On the day that jury selection began, the judge denied defense counsel's renewed motion for individual and sequestered voir dire but agreed to accept proffered questions as to the extent of publicity exposure that defense counsel would have asked during such voir dire. Rather than ordering individual voir dire, the judge required each prospective juror to complete a questionnaire concerning prior knowledge of the case before entering the courtroom for collective voir dire. The judge initially excused, without objection, a total of seventeen venirepersons based on the judge's assessment that these prospective jurors had indicated in their questionnaire responses "that they had some knowledge of the defendant and as a result of that knowledge that they would not be able to serve with an open mind and render ... an impartial decision based only on the law and the evidence."
During the State's voir dire of this first panel, the prosecutor asked if anyone had read about the case. Five prospective jurors raised their hands. The prosecutor then asked if anyone would have a problem basing his or her verdict solely on the evidence presented at trial. No hands were raised. Subsequently, defense counsel asked whether anyone who had read about the case had formed an opinion as to the guilt or innocence of Bolin and, if so, whether he or she could set aside that opinion. No hands were raised. As to the second group of venirepersons, neither the judge nor the prosecutor asked any collective questions concerning exposure to publicity. However, defense counsel asked, "After further reflection, do any of you who have indicated that you have some knowledge feel that your opinion about this case or the guilt or innocence of my client is so strong that you cannot set that opinion aside?" No hands were raised.
Bolin then challenged six of the remaining prospective jurors for cause based upon his inability to determine whether *1164 their exposure to pretrial publicity would make them unsuitable jurors. The judge denied the cause challenges. Defense counsel exercised peremptory strikes on two of the six venirepersons whom he had challenged for cause. In the second round of challenges, defense counsel challenged for cause prospective juror Moses, who stated that he had been exposed to pretrial publicity. When the judge denied the cause challenge, defense counsel exercised a peremptory strike to excuse Moses. Defense counsel requested four extra peremptories after his ten allowed peremptory strikes were exhausted in order to excuse the four prospective jurors remaining on the panel who indicated prior knowledge of the case. The judge denied defense counsel's request. The State's use of a peremptory challenge brought onto the panel another prospective juror, Wade, who said he had been exposed to pretrial publicity and who later was chosen to be the jury foreman. Defense counsel unsuccessfully challenged juror Wade for cause and then was denied an additional peremptory challenge. At the end of jury selection, defense counsel challenged the entire jury panel based on prejudice ensuing from probable juror awareness of Bolin's prior convictions. Bolin contends in this appeal that his jury contained five jurors-Ringuette, Copeland, Spack, Hill, and jury foreman Wade-with prejudicial prior knowledge about the case, potentially including knowledge of inadmissible facts set forth in the newspaper accounts.
We begin our analysis by acknowledging that we have held that a trial court has broad discretion in deciding whether prospective jurors must be questioned individually about publicity the case has received. Pietri v. State, 644 So.2d 1347, 1351 (Fla.1994). Individual voir dire to determine juror impartiality in the face of pretrial publicity is constitutionally compelled only if the trial court's failure to ask these questions renders the trial fundamentally unfair. See Mu'Min v. Virginia, 500 U.S. 415, 430, 111 S.Ct. 1899, 114 L.Ed.2d 493 (1991). The mere existence of extensive pretrial publicity is not enough to raise a presumption of unfairness of constitutional magnitude. Bundy v. State, 471 So.2d 9, 19 (Fla.1985). A prospective juror is presumed impartial if he or she can set aside a preformed opinion or impression and return a verdict based on evidence presented in court. Id. at 20.
However, in Boggs v. State, 667 So.2d 765 (Fla.1996), decided eight months before the instant trial, we held that another Pasco County trial court erred during a highly publicized trial in refusing to allow individual and sequestered voir dire of three venirepersons who were equivocal as to whether they could set aside preformed opinions regarding the guilt or innocence of the defendant. Id. at 768. All three eventually were excused through peremptory challenges by the defense. Id. We held that the error was not harmless because the trial court forced the defendant to use peremptory challenges on these three jurors and then denied him additional peremptory challenges. Id.
Here, not only was Bolin forced to use his peremptory challenges on prospective jurors he had challenged because of publicity exposure, he also was denied extra peremptory challenges and thus was forced to accept five jurors who had been exposed to pretrial publicity with contents unknown to defense counsel or to the court. Even though these jurors, unlike the challenged prospective jurors in Boggs, stated during voir dire that they had formed no opinions as to Bolin's guilt, there was no individual voir dire with specific questions concerning the jurors' knowledge of newspaper articles containing inadmissible and prejudicial information. Thus, defense counsel, the trial judge, and this Court are left to speculate about what these jurors had learned from these newspaper accounts.
In Reilly v. State, 557 So.2d 1365 (Fla. 1990), we found the same type of publicity *1165 concerning inadmissible information to be so prejudicial that even a prospective juror without a preformed opinion should not be allowed to serve on a jury after exposure to the publicity. Id. at 1367. In Reilly, we reversed a conviction and remanded for a new trial because a trial court erred in refusing to remove for cause a prospective juror who knew that an inadmissible confession had been given. Id. at 1367. We found that the prospective juror's awareness of a fact that was inadmissible "was far more damaging to Reilly than anything which was actually introduced into evidence." Id. In respect to such knowledge by a juror, we stated:
While [the juror] subsequently gave the right answers with respect to whether or not he could be an impartial juror, it is unrealistic to believe that during the course of deliberations he could have entirely disregarded knowledge of the confession no matter how hard he tried. Thus, we conclude that reversible error was committed by the failure to excuse [the juror] for cause.
Id.
Addressing the issue of prospective jurors' exposure to pretrial publicity as it relates to a defendant's Sixth Amendment right to an impartial jury and Fourteenth Amendment right to due process, the Eleventh Circuit wrote in Cummings v. Dugger, 862 F.2d 1504 (11th Cir.1989):
[T]he discretion afforded the trial judge to conduct voir dire as he sees fit must be bounded by protection of the defendant's constitutional rights, especially in a situation of extensive pretrial publicity. For example, in United States v. Davis, 583 F.2d 190 (5th Cir.1978), the former Fifth Circuit reversed the conviction of a defendant who had been the subject of extensive pretrial publicity. The Court held that, in a case where all the jurors had been exposed to some pretrial publicity, simply asking members of the jury venire to indicate by a show of hands whether the publicity would impair their ability to render an impartial decision did not adequately protect the defendant's constitutional rights.
The preferred approach in such cases, as discussed in Davis, is to conduct individual examination of the jurors. Individual voir dire allows the trial court to probe the effect of any adverse publicity on the juror and insulates the jurors from one another's prejudicial comments.
862 F.2d at 1507-08 (citations omitted).
In accord with Cummings, we hold that the preferred approach for Florida trial courts is to conduct individual and sequestered voir dire of prospective jurors whenever, as in Boggs, "the timing and content" of pretrial publicity creates the probability that prospective jurors have been exposed to prejudicial information that will not be admissible at trial. Clearly, the timing of the newspaper articles at issue in this case, which were published two days before and the day of the voir dire examination, was such that the information would be fresh in the minds of venirepersons who had read the articles. Just as clearly, the content of the articles stating that the defendant had been convicted in a prior trial of this same murder, that he had been convicted in other prior trials of murdering two Hillsborough County women, and that he had been sentenced to death was prejudicial and inadmissible information. These articles also contained information about Bolin's former wife's testimony as to Bolin's confession to her, which was the very information this Court had found to be erroneously admitted at Bolin's prior trial. This Court had found harmful error in the admission of this same evidence and had reversed the conviction and remanded for the instant retrial below. Exposure to this information might not require disqualification of prospective jurors if this information were going to be introduced into evidence. See Reilly, 557 So.2d at 1367. However, all of the foregoing information had been excluded from this trial on evidentiary grounds. Moreover, the entire jury venire likely *1166 would have been tainted by knowledge of all of this inadmissible evidence if the trial judge or counsel had questioned prospective jurors in the presence of other venirepersons regarding exposure to pretrial publicity.
We further comment on this issue to provide guidance to trial judges when confronted with pretrial publicity in cases in which the death penalty is sought. Such publicity is normal in cases with extreme public interest, see Rolling v. State, 695 So.2d 278, 285 (Fla.1997), and we continue to adhere to our holding that the decision as to individual and sequestered voir dire is a discretionary decision for the trial judge. However, as a caveat, we advise trial courts that they must consider the timing and content of the published information in making the decision as to whether to conduct individual and sequestered voir dire. Trial courts must ascertain whether prospective jurors possess information which is not admissible in the trial in which they will serve as jurors and which is so prejudicial to the defendant that the jurors' knowledge of the information creates doubt as to whether the jurors can decide the case based solely upon the evidence that will be admitted at trial.[2]
As we have stated, the defense counsel, the prosecutor, the trial judge, and this Court could not have known, absent individual voir dire, whether the five jurors, including the jury foreman, named by Bolin in this appeal had been exposed to the inadmissible and prejudicial information. Thus, we find that under the facts of this case the trial court abused its discretion in refusing to grant Bolin's request for individual and sequestered voir dire. Accordingly, we remand for a new trial.
Bolin's second claim, regarding the testimony of his half-brother, Phillip Bolin, would be procedurally barred in this appeal because defense counsel did not preserve the claim by making the specific objection that Phillip Bolin's prior statements could not be admitted as substantive evidence. See Ferguson v. State, 417 So.2d 639, 641 (Fla.1982); Steinhorst v. State, 412 So.2d 332, 338 (Fla.1982). However, we caution the court in the new trial to prevent the prosecutor from using prior conflicting statements of a witness as substantive evidence of guilt in the guise of impeachment evidence. In Morton v. State, 689 So.2d 259 (Fla.1997), this Court found a prosecutor's improper impeachment of State witnesses to be harmless error. The Court also observed that continual impeachment and assertion of statements as proven facts made it difficult to separate substantive from impeachment evidence. 689 So.2d at 264. In this case, the trial court allowed the prosecutor to examine Phillip Bolin, a court witness who had recanted previous testimony, solely to present prior statements as to his eyewitness account of events surrounding the murder. Although these prior statements were presented under the guise of impeachment, their effect was substantive, and thus it was error to allow them.
For purposes of the new trial, we also address Bolin's fourth claim, in which he argues that the trial court erred in allowing State witness Sergeant Gary Kling of the Pasco County Sheriff's Office to testify as to details of the homicide that law enforcement officers withheld from the news media. The prosecutor's stated purpose in presenting this testimony was to offer an anticipatory rebuttal of a potential defense closing argument (which was never made), alleging that witness Phillip Bolin knew certain details of the crime only because he read about them in a newspaper article. We agree with Bolin that this portion of Kling's testimony was hearsay *1167 and was not relevant. Over hearsay objection, the prosecutor questioned Kling to establish that police reports, as public records or business records, indicated which details of the crime were not released. Kling was permitted to testify that newspapers did not report that the victim's body and clothing were wet, her shoes were missing, and she was wearing stockings. The prosecutor argued that if Kling testified to what was not in newspaper accounts, this was not hearsay. However, police reports are hearsay. § 90.803, Fla. Stat. (1985). Additionally, Kling testified that he was not initially involved in the investigation, which further supports the hearsay conclusion in that Kling's testimony depended on information from others. See Norton v. State, 709 So.2d 87, 95 (Fla. 1997). Here, the trial court, in admitting the testimony, may have relied upon the business-records exception to the hearsay rule, section 90.803(6), Florida Statutes (1985), which fails as a basis for admission because no actual records were offered or admitted. Oral testimony concerning business records is not admissible under this exception. § 90.803(6), Fla. Stat. (1985); Thompson v. State, 705 So.2d 1046 (Fla. 4th DCA 1998); Johnson v. State, 691 So.2d 43, 44 (Fla. 2d DCA 1997).
Aside from being hearsay, this testimony by Kling was inadmissible because it was not relevant to a material fact in issue. § 90.401, Fla. Stat. (1985). Had defense counsel discussed media coverage of police reports, this evidence could have been relevant. However, the defense never mentioned such media coverage, and thus this portion of Kling's testimony was irrelevant and therefore is inadmissible. The testimony of Kling as to information not published in the news media was erroneously admitted and cannot be admitted in the new trial.
Accordingly, we reverse Bolin's conviction and sentence and remand for a new trial.
It is so ordered.
HARDING, C.J., SHAW, WELLS, ANSTEAD and PARIENTE, JJ., and OVERTON, Senior Justice, concur.
NOTES
[1] Bolin claims that: (1) the trial court erred in not permitting individual and sequestered voir dire of prospective jurors concerning exposure to pretrial publicity; (2) the trial court erred in allowing the prosecutor to introduce prior statements during examination of witness Phillip Bolin; (3) the trial court erred in denying appellant's motion for mistrial after the prosecutor mentioned appellant's first trial; (4) the trial court erred in allowing a police detective to testify as to details of the homicide not reported to or by news media; (5) there was misuse of DNA statistical evidence during the prosecutor's closing argument, which created reversible error; (6) the trial court erred in not permitting appellant to consult with his investigator during a court recess; (7) the trial court erred by instructing the jury on felony murder with sexual battery as the underlying felony; and (8) the trial court erred in denying defense counsel's request to have a PET-scan performed on appellant prior to the penalty phase.
[2] We are well aware of the time pressures on trial judges, and we know that long voir dire examinations wreak havoc on overloaded court calendars. However, in this case, a retrial might have been avoided if the court had taken the time to determine what facts fewer than ten venirepersons knew about Bolin's case based on news accounts they had read.